AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>Jared Michael EWELL<br>(YOB: 2002)<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  24 MJ 295 LF<br>)<br>)<br>)<br>) |

**FILED**
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  February 29, 2024  in the county of  Bernalillo  in the
_____ District of  New Mexico  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 (a)(1) and (b)(1)(B) | Possession with intent to distribute 500 grams and more of a mixture and substance containing cocaine. |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

*Complainant's signature*

Jared Shupla, Special Agent (BIA)
*Printed name and title*

Electronically submitted and telephonically sworn.

Date:  03/01/2024

*Judge's signature*

City and state:  Albuquerque, New Mexico        Honorable Laura Fashing U.S Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Jared Shupla being duly sworn, hereby, depose and state as follows:

INTRODUCTION

1. I am a Special Agent (SA) with the Bureau of Indian Affairs (BIA) United States Department of the Interior currently assigned to the Division of Drug Enforcement, and as such am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 and Title 21, of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18 and Title 21 of the United States Code, including violations which occur on Indian Reservations, also known as Indian Country, within the special Maritime and Territorial Jurisdiction of the United States.

    a) I began my law enforcement career in 2002 when I enlisted into the United States Army and served honorably for eight years active duty as a military policeman.

    b) After being honorably discharged from the US Army, in October 2010 I was employed with the Pueblo of Acoma Police Department as a Patrolman. I attended and graduated from the Federal Law Enforcement Training Center Land Management Patrol Techniques class, where I served as squad leader. I was trained in the investigation of crimes ranging from but not limited to, DUI's, assaults, domestic violence, vehicle collisions, death investigations, archeological violations, etc.

    c) In May of 2012, I was employed by the Santa Clara Tribal Police Department where I served as a police officer. I served as the Indian Highway Safety Officer for the Santa Clara Police Department. I enforced all traffic laws set forth by the Santa Clara Tribal Code within the exterior boundaries of the Santa Clara Pueblo which included intercity

roads of the City of Espanola as well as the county roads of Rio Arriba County. I investigated allegations of DUI's and responded to traffic collisions. I coordinated and oversaw the operation of several DUI checkpoints. I served as a liaison for the Santa Clara Tribal Police Department in collaboration with the Rio Arriba DWI Program. I compiled statistics for all traffic stops, DUI arrests, traffic collisions and citations issued by the Tribal Police Department for the DWI program.

d) In October of 2016, I became a Federal K9 Officer with the BIA Division of Drug Enforcement. I conducted intercity and highway interaction with vehicles and individuals responsible for human trafficking, transportation of illegal narcotics, illegal weapons, and large sums of U.S. currency on and off tribal land. I have conducted multiple investigations relating to violations of the Major Crimes Act and federal narcotics violations. I conducted several criminal narcotics investigations in my respective assigned duty station and have issued summons through the Central Violations Bureau (CVB). I successfully completed a four-week K9 handlers' course in Muskogee, Oklahoma. I was trained to detect the change in behavior of my K9 partner which led to the detection of narcotics.

e) I am currently assigned to the Albuquerque Office Division of Drug Enforcement of the BIA as a Special Agent and have primary investigative responsibility in federal drug violations occurring in Indian Country. I am also a Task Force Officer with the Department of Homeland Security Albuquerque Office. I have completed the seven-week Department of the Interior Investigators training program in Brunswick, Georgia. I received training on conducting long term investigations, crime scene processing, surveillance, report writing, control tactics and crime scene photography.

2. As a result of my personal participation in the investigation described herein and my review of the oral reports made to me by fellow officers, and other concerned parties, I am familiar with the circumstances, facts and information contained in this affidavit. On the basis of my direct participation in this investigation, as well as my familiarity with other aspects of this investigation, I believe the facts contained in this affidavit establish probable cause for the issuance of a criminal complaint for the arrest of Jared Michael EWELL, for a violation of: 21 U.S.C. §§ 841 (A)(1) and (b)(1)(B); that being possession with intent to distribute 500 grams and more of a mixture or substance containing a detectable amount of cocaine.

3. The information set forth in this affidavit has been derived from an investigation conducted by me as well as BIA K9 Officer J. Williams, BIA Division of Drug Enforcement and communicated to me by other sworn law enforcement officers or witnesses. The following information does not contain all items known to me but rather is used to establish sufficient probable cause for the crimes described below.

## PROBABLE CAUSE

1.   On February 29, 2024, at or about 11:05 a.m., BIA K9 Officer J. Williams was on duty, in full uniform, in his marked K9 patrol unit. Officer Williams was monitoring traffic on the Eastbound Lane of Interstate 40 monitoring traffic near the mile marker 139. While monitoring traffic, Officer Williams observed what was later identified as a white 2018 Nissan Altima, bearing Arizona license plate 56A7XB. K9 Officer Williams observed the above vehicle traveling east while approaching the exit 140 (66 Casino exit). As the vehicle was approaching the exit, K9 Officer Williams observed the vehicle begin to merge into the far outside lane without properly signaling. The vehicle's right turn signal began blinking as it was halfway through the lane which was less than 100 feet before turning off at exit 140. K9 Officer Williams also noticed the vehicle

fail to signal when exiting the traffic circle adjacent to the Route 66 Casino Travel Plaza. K9 Officer Williams knew this violated New Mexico State Law Statute § 66-7-325-Turning movements and required Signals.

2. K9 Officer Williams then activated his emergency lights and in car video recording camera to conduct a traffic stop adjacent to the 66 Travel Center Plaza for the above traffic infraction. K9 Officer Williams contacted the driver who was identified as Jared Michael EWELL (year of birth 2002) and advised EWELL the reason for stop. EWELL was asked for his driver's license, vehicle registration and proof of insurance. K9 Officer Williams advised EWELL that he would be receiving a warning. EWELL was instructed to exit the vehicle and return to K9 Officer Williams patrol vehicle while he conducted the enforcement phase of the traffic stop.

3. During the enforcement action, K9 Officer Williams conducted record checks and began filling out a written warning. While conducting the enforcement action K9 Officer Williams engaged EWELL in general conversation without breaking his duties. K9 Officer Williams later confirmed the license plate did come back to the Nissan sedan belonging to Deborah Sanchez-Tom.

4. EWELL told K9 Officer Williams that he left Phoenix, Arizona earlier that morning and was traveling to Albuquerque, New Mexico. EWELL told K9 Officer Williams that he was going to Albuquerque to visit his aunt. EWELL also told K9 Officer Williams that he was leaving back to Phoenix either Saturday or Sunday depending on how he was feeling.

5. During this time, Officer Jackson arrived on the traffic stop and deployed his certified narcotics detection Canine, K-9 Kofi. K9 Officer Jackson later indicated to K9 Officer Williams that K9 Kofi gave an alert for the presence of narcotics inside the vehicle. Upon

completing the enforcement action, K9 Officer Williams advised EWELL of the alert and the probable cause search that was about to take place.

6. Following the K9 alert, Officer Jackson and K9 Officer Williams began a search of the Nissan Altima. During the course of the search, K9 Officer Jackson located two packages inside a brown duffle bag on the backseat. Based upon both K9 Officers' training and experience, the packages were consistent with the packaging of narcotics. A continued search of the vehicle also yielded a small glass clear container with a white powdery substance suspected to be cocaine, which was located inside the center console of the vehicle. Also located in the center console was a clear plastic bag containing an unknown number of round blue pills imprinted with "M 30" suspected to be fentanyl. In total, two bundles wrapped in plastic bags were removed from the Nissan Altima. Along with the suspected fentanyl and small vile of suspected cocaine.

7. It should be noted that K9 Officer Jackson advised EWELL of his Miranda rights which he acknowledged. When asked about his knowledge of the suspected narcotics EWELL admitted to K9 Office Jackson that this was his second trip transporting illegal narcotics.

8. BIA Special Agent Swanlyn Chico later weighed, and field tested the substance and determined it to be 2.273 Kilograms or 2,273.7 grams gross weight in packaging material. All suspected cocaine and fentanyl will be sent to a laboratory for further analyses. The substance field tested positive for Cocaine with the TruNarc testing device.

9. EWELL was later transported along with his vehicle to the Homeland Security Office in Albuquerque. During a Mirandized interview EWELL did not wish to provide any information regarding the suspected narcotics and stated that he think he should consult an attorney. The interview was concluded at this time.

10. A count was later done on the suspected fentanyl pills which totaled 20 "M30" pills and one and a half-suspected Adderall pill.

## **CONCLUSION**

11. Based on the forgoing information, your affiant believes there is probable cause to believe that EWELL: possessed with intent to distribute 500 grams and more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

12. I swear that this information is true and correct to the best of my knowledge and belief.

13. This Affidavit has been approved by Assistant United States Attorney Elaine Ramirez.

_____
Jared Shupla
Special Agent
Bureau of Indian Affairs


Subscribed to and telephonically sworn before me on this the 1st day of March 2024.

_____
Honorable Laura Fashing
United States Magistrate Judge
New Mexico Judicial District
Albuquerque, New Mexico